IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No.  05-cv-00706-REB-BNB

ROBERT CHARLES ABELL, and
LISA JEAN ABELL,

Plaintiffs,

v.

WILLIAM R. SOTHEN, and coworkers as individuals, and
INTERNAL REVENUE SERVICE (writ of mandamus),

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This case was initiated by the filing of a document captioned *Petition to Quash Summons,*

*Petition for Writ of Mandamus, Demand for a Bill of Particulars, Claim for Personal Damages*

[Doc. # 2, filed 4/18/05] (the "Petition").  The plaintiffs, Robert Charles Abell and Lisa Jean

Abell, are proceeding *pro se.*

The Petition, which 37 pages in length, is vague, disorganized, and rambling.  Filed with

the Petition was a document captioned *Memorandum of Law In Support of Petition to Quash*

[Doc. # 3, filed 4/18/05] (the "Brief").  The Brief, 24 pages in length, is similarly vague,

disorganized, and rambling.  Attached to the Brief are 1-1/2 inches of materials identified as the

"Tax Audit Defense Manual, ver. 1.15," bearing a copyright designation for Christopher Hansen

and reprinted from the internet at http://famguardian.org/.  The Petition does not present a "short

and plain" statement of the claims raised, as required by  Fed. R. Civ. P. 8.

Also attached to the Brief are copies of four IRS summonses and related materials, which

appear to form the principal basis of the plaintiffs' claims.  The IRS summonses are directed to

Indymac Bank Homeloan Servicing, in Pasadena, California; Wells Fargo Bank N.A., in Durango,

Colorado; Union Bank of California N.A., in San Francisco, California; and Countrywide Home

Loans Legal Dept., in Calabasas, California.  Each summons seeks financial information about

David C. Abell and Lisa J. Abell.

The plaintiffs are tax protestors.  The following provides the flavor of their arguments:

> The court has in personam jurisdiction against the Defendants but
> _not_ against the Plaintiffs under 26 U.S.C. §7609(h).  This results
> from the fact that the Plaintiffs _do not_ reside and are not found in
> any Internal Revenue District or Judicial district.  Under Treasury
> Order 150-02, all Internal Revenue Districts outside of the District
> of Columbia were abolished as a result of the _IRS Restructuring
> and Reform Act of 1998_, 112 Stat. 685, and the Plaintiffs do _not_
> reside within the District of Columbia and do not consent or
> volunteer to be treated like they do.
>
> \*   \*   \*
>
> The court does _not_ have jurisdiction under the _IRS Restructuring
> and Reform Act of 1998_, 112 Stat. 685, section 3415 entitled
> "Taxpayers Allowed to Quash All Third Party Summonses" for this
> particular case.  The basis for this conclusion is that the Plaintiffs
> are not "taxpayers", but instead are "nontaxpayers".  Consequently,
> this petition and Petition to Quash is being pursued under the rules
> of _equity_, and not under _law_.
>
> \*   \*   \*
>
> Likewise, those who are Christians such as ourselves are precluded
> by God's law (the Bible) from depending on the "interpretations of
> men" of the law, including the Constitution and the Internal
> Revenue Code.  This edict is especially true concerning the
> proclamations of the Pharisees (lawyers).  The law _must_ stand on its
> own two feet and _not_ require a Pharisee to interpret, because doing
> so transforms our "society of law" into a "society of men" in
> violation of the legislative intent of the Constitution as revealed in
> _Marbury v. Madison_. . . .
>
> \*   \*   \*
>
> Christians, including the Plaintiffs, are not allowed to "assume" or
> "presume" anything about any aspect of their legal duties or
> liabilities either. . . .

2

Consequently, Americans are left with *no reasonable, objective, rational basis or belief* about their "legal duty" and "liability" to pay federal income taxes.  What remains is ignorance, superstition, and a false god and religion called "government" to "worship" and obey, in violation of the First Amendment.  Government may *not* make itself into a god, with powers and privileges beyond any ordinary citizen and beyond the rules and boundaries established by the written law.

*   *   *

The only resulting suitable basis upon which a concerned and law-abiding American can form a good faith, reasonable belief about "liability" is their own *personal* reading Internal Revenue Code itself, the regulations that implement it, and the Supreme Court rulings that interpret it.  Americans living in states of the union, like the IRS (see IRM 4.10.7.2.9.8), cannot rely on any rulings below the Supreme Court as a basis for belief, because district and circuit courts are precluded from ruling on rights and status in the context of federal income taxes under 28 U.S.C. §2201, which is a big indication that the Internal Revenue Code does not apply outside of the territories and possessions of the United States and the District of Columbia, which we call the "federal zone" or "federal United States" in this pleading.

These "common persons" [the plaintiffs] have spent *five years* diligently studying the Constitution, the Internal Revenue Code, and the Treasury Regulations and have independently determined, as the Supreme Court said they must, that they have *no legal duty* to pay any internal revenue tax and are not "taxpayers", and instead are "nontaxpayers".  It has been and continues to be the duty of the government in this case to produce a statute and implementing regulation that imposes a legal duty and if it cannot or will not in this specific case, then it is estopped from further enforcement actions under the rules of equity.  The first and only legal duty ever imposed by Congress upon Americans in the states, appearing in the Revenue Act of 1894, was declared unconstitutional by the Supreme Court  *Pollack v. Farmers Loan and Trust*, 157 U.S. 429, 158 U.S. 601 (1895).  No legal duty has ever appeared within federal law or within subtitles A through C of the Internal Revenue Code for anything *other* than federal employees acting in their official capacity.

3

Petition, pp.5, 10-12.[1]

The Petition seeks the following relief:

(1)      An order quashing the four summonses, id. at pp.7-9;

(2)      A bill of particulars "documenting probable cause on the part of the IRS to proceed with further discovery related to any imputed federal tax liability," id. at p.9;

(3)      Monetary damages against the revenue agent (William R. Sothen) and his co-workers, "from his *personal* pay and assets, and *not* from the government or from the United States as Defendant," as a result of an alleged "pattern of harassment, intimidation, violation of due process (Fifth Amendment), extortion under the color of law (18 U.S.C. §872), and abuse of legal process (18 U.S.C. §1589(3)). . . ," id.; and

(4)      A writ of mandamus, as follows:

> [T]o compel the supervisors of this/these errant federal actors [the revenue agents] and outlaws to discipline them and compel them to cease their unlawful activities to threaten, stalk, harass, and otherwise oppress the natural and Constitutional rights of the Plaintiffs in violation of 18 U.S.C. § 1589(3).

Id. at pp.9-10.

The United States responded to the Petition by filing the *United States' Motion for Summary Denial of Petition to Quash (and Its Incorporated Petition for Writ of Mandamus), and for Enforcement of Internal Revenue Service Summonses* [Doc. # 18, filed 7/19/05] (the "Motion to Dismiss"). The United States argues in its Motion to Dismiss, first, that the Petition is a suit against the United States and that the United States should be substituted for the named

---

[1]Quotations are taken directly from the Petition. I have not attempted to identify grammar or punctuation errors in the quoted portions, although I am aware that they exist.

defendants; second, that the plaintiffs' claims against the United States for damages are barred by

sovereign immunity; third, that no individual action against the revenue agents exists under Bivens

v. Six Unknown Named Agents, 403 U.S. 388 (1971); fourth, that the summonses against Wells

Fargo Bank and Countrywide Home Loans are proper and should be enforced, and the motion to

quash them should be denied; and, finally, that this is not a proper circumstance for a writ of

mandamus.

The plaintiffs thereafter filed a document captioned *Motion to Dismiss Summary Denial*

*and Enforcement of Internal Revenue Service Summonses* [Doc. # 30, filed 8/19/05] (the

"Plaintiffs' Response").  Although captioned as a motion, it is apparent that this is a response to

the government's Motion to Dismiss, and I construe it as such.  The Plaintiffs' Response is

devoted to the argument that the court lacks jurisdiction over the plaintiffs to order enforcement

of the summonses because "the Plaintiffs *do not* reside and are *not* found in any Internal Revenue

District or Judicial district."  According to the plaintiffs:

> Under Treasury Order 150-02, all Internal Revenue Districts
> outside of the District of Columbia were abolished as a result of the
> IRS Restructuring and Reform Act of 1998, 112 Stat. 685, and the
> Plaintiffs do *not* reside within the District of Columbia and do not
> consent or volunteer to be treated like they do.
> 
> \*   \*   \*
> 
> This court does *not* have jurisdiction under 26 U.S.C. 7609(h) over
> these summonsed parties because they do not reside in ANY United
> States judicial district.  These judicial districts *only* include federal
> properties ceded to the federal government as required by 40
> U.S.C. 255 and its successors 40 U.S.C. 3111 and 3112.  The
> court, however, does not need jurisdiction over the parties
> summonsed in this case, if it orders the Defendant and his employer,
> the IRS, to dispose of and destroy any evidence illegally obtained,
> and issues an order not allowing evidence gathered to be used in
> any future proceeding or investigation because it has been illegally
> obtained.

Plaintiffs' Response, pp.1-2.

# I.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the *pro se* plaintiffs' pleadings.  Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  I do not act as an advocate for *pro se* litigants, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiffs' well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiffs.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A claim should be dismissed only where, without a doubt, the plaintiffs could prove no set of facts in support of the claim that would entitle them to relief.  Id.

# II.  ANALYSIS

## A.  Substitution of the United States

The Petition is brought against "William R. Sothen and coworkers, et al. as *individuals*; Internal Revenue Service (writ of mandamus) Defendants."

Part of the plaintiffs' claim is for an award of damages personally against Revenue Agent Sothen.  In particular, at page 9 of the Petition, the plaintiffs state:

> Restitution is sought from the Defendant [Sothen] from his *personal* pay and assets, and *not* from the government or from the United States as Defendant, since no statute and implementing regulation published in the federal register has been demonstrated authorizing the Defendant to do what he is doing. . . .

Petition, p.9 at ¶6.3.2.  The facts alleged in support of the claim, however, all involve Revenue

Agent Sothen's actions in his official capacity in connection with tax collection efforts, as follows:

> A pattern of harassment, intimidation, violation of due process
> (Fifth Amendment), extortion under the color of law (18 U.S.C.
> §872), and abuse of legal process (18 U.S.C. §1589(3)) has
> characterized the actions of both the Defendant and his coworkers
> _as individuals_.  This pattern of administrative legal abuse has
> prejudiced the Constitutional rights of the Plaintiffs and resulted in
> involuntary servitude responding to the illegal activities of the
> Defendants and his coworkers.  Plaintiffs thereby request of this
> honorable court the restitution called for under 18 U.S.C. §1593 for
> considerable, involuntary time and expense resulting from the need
> to respond to frivolous and unauthorized actions of the Defendant
> in the mis-enforcement of the internal revenue laws of the federal
> United States.

Id. at ¶6.3.1.  See also Brief, at pp.15-17 (further detailing the "History of of Interaction With

Defendant(s) and Their Employer").

Under similar facts, the Tenth Circuit Court of Appeals ruled in Atkinson v. O'Neill, 867

F.2d 589, 590 (10th Cir. 1989), that "[w]hen an action is one against named individual

defendants, but the acts complained of consist of actions taken by defendants in their official

capacity as agents of the United States, the action is in fact one against the United States."

Accord Burgos v. Milton, 709 F.2d 1 (1st Cir. 1983)(holding that "[a]lthough the . . . action is

nominally one against individual defendants, the acts complained of consist of actions taken by

defendants in their official capacity as agents of the United States," and that "[u]nder such

circumstances, the action is in fact one against the United States").

Insofar as the Petition may be read to assert claims against Revenue Agent Sothen and his

co-workers in their official capacities, I agree that the United States must be substituted as the

proper defendant.

The Petition also names the Internal Revenue Service as a defendant.  The Internal Revenue Service is not an entity capable of being sued.  <u>Posey v. United States Dept. of the Treasury--Internal Revenue Service</u>, 156 B.R. 910, 917 (W.D.N.Y. 1993)(stating that "suit against the IRS or the Treasury Department is not available in federal court"); <u>Krouse v. United States Government Treasury Dept. Internal Revenue Service</u>, 380 F. Supp. 219, 221 (C.D. Cal. 1974)(holding that "[t]he Department of the Treasury and the Internal Revenue Service are not entities subject to suit and they should be dismissed").  A suit purporting to bring claims against the IRS is deemed to be a suit against the United States.  <u>Posey</u>, 156 B.R. at 917.

## B.  The United States Is Immune From Suit

The plaintiffs' claims against the revenue agents in their official capacities and against the Internal Revenue Service are claims against the United States.  "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." <u>Atkinson</u>, 867 F.2d at 590.  As the circuit court explained in <u>Fostvedt v. United States</u>, 978 F.2d 1201 (10th Cir. 1992), another case involving a tax protest:

> The United States may not be sued without its consent.  Such a waiver of sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute.  It long has been established that the United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.  A waiver of sovereign immunity cannot be implied, but must be explicitly expressed.
>
> *    *    *
>
> The burden is on the taxpayer to find and prove an explicit waiver of sovereign immunity.

<u>Id.</u>, at 1202-03 (internal quotations and citations omitted).

The plaintiffs have not identified any waiver of sovereign immunity applicable to this case,

and I am not aware of any.  To the contrary, courts presented with similar facts have consistently

held that the United States has not waived its immunity:

> The United States may consent to be sued, and the federal
> government has waived immunity for some tort claims under the
> Federal Tort Claims Act, 28 U.S.C. § 1346, allowing agents of the
> government to be sued in a tort action.  The Act, however,
> specifically excludes claims arising out of the assessment of any tax.
> 28 U.S.C. § 2680(c).  Section 2680(c) has been interpreted broadly
> to preclude suits for damages arising out of allegedly tortious
> activities of IRS agents when those activities were in any way
> related to an agent's official duties.

Provenza v. Rinaudo, 586 F. Supp. 1113, 1117 (D. Md. 1984) (citing Capozzoli v. Tracey, 663

F.2d 654, 658 (5th Cir. 1981); Stankevitz v. IRS, 640 F.2d 205, 206 (9th Cir. 1981); and

Broadway Open Air Theatre v. U.S., 208 F.2d 257, 258-59 (4th Cir. 1953)).

In summary, the plaintiffs' claims against Revenue Agent Sothen and his co-workers, in

their official capacities, and against the Internal Revenue Service are claims against the United

States.  The claims arise out of efforts to collect taxes.  Consequently, these claims are barred by

sovereign immunity.

Similarly, the plaintiffs have failed to identify any waiver of sovereign immunity which

would entitle them to relief in the nature of a bill of particulars "documenting probable cause on

the part of the IRS to proceed with further discovery related to any imputed federal tax liability."

Petition, p.9.  Courts presented with similar claims have dismissed them as barred by sovereign

immunity.  Watts v. Internal Revenue Service, 925 F. supp. 271, 276 (D. N.J. 1996).

### C.  No <u>Bivens</u> Action Exists Against the
### Revenue Agents as Individuals

The plaintiffs also appear to be attempting to assert claims against Revenue Agent Sothen

and his co-workers in their individual capacities under <u>Bivens v. Six Unknown Named Agents</u>,

403 U.S. 388 (1971).  The plaintiffs allege, in conclusory terms, the following:

> A pattern of harassment, intimidation, violation of due process
> (Fifth Amendment), extortion under the color of law (18 U.S.C. §
> 872), and abuse of legal process (18 U.S.C. § 1589(3)) has
> characterized the actions of both the Defendant and his coworkers
> <u>*as individuals*</u>.  This pattern of administrative legal abuse has
> prejudiced the Constitutional rights of the Plaintiffs and resulted in
> involuntary servitude responding to the illegal activities of the
> Defendant and his coworkers.

Petition, p.9 at §6.3.1.[2]

<u>Bivens</u> claims are not available in this tax-related dispute because Congress has created  a

comprehensive statutory scheme which provides alternative remedies for the types of wrongs

alleged here.  As the circuit court explained in <u>National Commodity and Barter Ass'n, National</u>

<u>Commodity Exchange v. Gibbs</u>, 886 F.2d 1240, 1248 (10th Cir. 1989):

> The same considerations which led the Supreme Court in
> [<u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988)] to conclude that the
> recognition of a <u>Bivens</u> claim would be inappropriate [in a claim
> involving the social security system, <u>i.e.</u>, the presence of an
> elaborate mechanism for the resolution of claims] are applicable
> here with respect to the NCBA's allegations of violations of the
> fifth amendment due process clause and of various provisions of the
> Internal Revenue Code.  Although there may be no established
> mechanism for the recovery of damages against federal authorities

---

[2]Arguments similar to the plaintiffs' claim that they have been subjected to involuntary
servitude prohibited by the Thirteenth Amendment because they have been required to expend
"involuntary time and expense" to respond to tax collection efforts, Petition at ¶ 6.3.1, have been
considered by the courts and rejected as frivolous.  <u>See</u>, <u>e.g.</u>, <u>Van Stafford v. Spitzer</u>, 1992 U.S.
Dist. LEXIS 16163 *7 (D. Colo. Sept. 28, 1992)

> for unconstitutional conduct, the unavailability of complete relief
> does not mandate the creation of a <u>Bivens</u> remedy when other
> "meaningful safeguards or remedies for the rights of persons
> situated as were the plaintiffs are available. In this case, the NCBA
> has recourse to challenge the legality of the penalty assessment
> under several provisions of the Internal Revenue Code.

<u>Accord</u> <u>Dahn v. United States</u>, 127 F.3d 1249, 1254 (10th Cir. 1997)(holding that "in light of the

comprehensive administrative scheme created by Congress to resolve tax-related disputes,

individual agents of the IRS are also not subject to <u>Bivens</u> actions").

The conduct which gives rise to this action is the plaintiffs' objection to the government's

efforts, through the four summonses, to obtain financial information about them. The plaintiffs

have an alternative remedy, however, other than a <u>Bivens</u> action for money damages, and one

which is specifically designed to address the particular problems involved here. In particular, 26

U.S.C. § 7609 contains special procedures applicable to third party summonses, as are at issue

here. Section 7609(b)(1)-(2) specifically allows the party whose records are being sought to

intervene or to move to quash the summons.

Here, as in the <u>Gibbs</u> case, the plaintiffs have a means to challenge the legality of the

summonses under provisions of the Internal Revenue Code. It therefore would be inappropriate

to recognize a <u>Bivens</u> remedy under these facts. <u>Gibbs</u>, 886 F.2d at 1248.

### D.  Mandamus Is Not Available

The plaintiffs also seek a writ of mandamus to unspecified federal officers, alleging in part:

> The accompanying Petition for Writ of Mandamus is submitted to
> compel the supervisors of this/these errant federal actors and
> outlaws to discipline them and compel them to cease their unlawful
> activities to threaten, stalk, harass, and otherwise oppress the
> natural and Constitutional rights of the Plaintiffs in violation of 18
> U.S.C. § 1589(3) [a criminal statute prohibiting forced labor].

\* \* \*

In addition, a Writ of Mandamus is requested to compel the IRS to rebut the evidence of its wrongful activities to enforce and collect federal income taxes against the Plaintiffs, and to produce facts and evidence upon which they and the public at large can rely upon to reach a reasonable belief that they have a legal duty and liability.

\* \* \*

The Plaintiffs therefore alleges that any enforcement actions by this court of the Defendant are completely illegal because not specifically authorized by both a statute _and_ an implementing regulation published in the federal register. . . .  Authority over alcohol, tobacco, firearms, terrorism, drugs, or internal revenue taxes within states of the Union was _never_ surrendered to the federal government under the Constitution or any of the amendments since, violates the legislative intent of the Constitution, and illegally and unconstitutionally displaces or supersedes the police powers and sovereignty of the states of the Union.

\* \* \*

Consequently, the Plaintiffs request that this hopefully honorable court issue a Writ of Mandamus compelling the Defendant and his employer, the Internal Revenue Service, to rebut the overwhelming evidence provided in Exhibit (1A) showing that there are _no laws_ that authorize the enforcement of Subtitle A or C federal income taxes upon Americans who are born in and domiciled in states of the Union and who are not "citizens of the United States" under 8 U.S.C. § 1401 or "residents" under 26 U.S.C. § 7701(b)(1)(A).

Section 1361, 28 U.S.C., grants district courts original jurisdiction in actions in the nature of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  In Paniagua v. Moseley, 451 F.2d 228, 229 (10th Cir. 1971), the circuit court held:

Mandamus is an extraordinary remedial process and before relief of this nature can be afforded it must appear that the claim is clear and certain and the duty of the officer involved must be ministerial, well defined, and peremptory to the end that the duty must be a

12

positive command and so plainly prescribed as to be free from
doubt.

The plaintiffs argue in conclusory terms that the revenue agents threatened, stalked,
harassed, and otherwise oppressed them.  The factual underpinning of these claims, however,
appears to be the issuance of the summonses on banks in furtherance of the government's efforts
to collect taxes.  This argument, as well as the plaintiffs' assertion that the revenue agents' efforts
to collect taxes are "completely illegal because not specifically authorized by both a statute *and* an
implementing regulation published in the federal register," have been considered and rejected in
this circuit and throughout the country.  For example, in <u>Lonsdale v. United States</u>, 919 F.2d
1440, 1448 (10th Cir. 1990), the plaintiffs argued, as do the plaintiffs here, that "the Internal
Revenue Service has no power to impose levies because orders delegating such power were not
published in the Federal Register as required by law. . . ."  The circuit court determined that the
arguments were frivolous and held:

> As the cited cases, as well as may others, have made abundantly
> clear, the following arguments alluded to by the [plaintiffs] are
> completely lacking in legal merit and patently frivolous:
> (1) individuals ("free born, white, preamble, sovereign, natural,
> individual common law 'de jure' citizens of a state, etc.") are not
> "persons" subject to taxation under the Internal Revenue code;
> (2) the authority of the United States is confined to the District of
> Columbia; (3) the income tax is a direct tax which is invalid absent
> apportionment, and <u>Pollock v. Farmers' Loan & Trust Co.</u>, . . . is
> authority for that and other arguments against the government's
> power to impose income taxes on individuals; (4) the Sixteenth
> Amendment to the Constitution is either invalid or applies only to
> corporations; (5) wages are not income; (6) the income tax is
> voluntary; (7) no statutory authority exists for imposing an income
> tax on individuals; (8) the term "income" as used in the tax statutes
> is unconstitutionally vague and indefinite; (9) individuals are not
> required to file tax returns fully reporting their income; and
> (10) the Anti-Injunction Act is invalid

To this short list of rejected tax protester arguments we now add as equally meritless the additional arguments made herein that (1) the Commissioner of Internal Revenue Service and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws, including power to issue summons, liens and levies, because of invalid or nonexistent delegations of authority, lack of publication or delegations of authority in the Federal Register, violations of the Paperwork Reduction Act, and violations of the Administrative Procedure Act, including the Freedom of Information Act; and (2) tax forms, including 1040, 1040A, 1040EZ and other reporting forms, are invalid because they have not been published in the Federal Register.

In view of the well established authority of the Internal Revenue Service and its agents to engage in tax collection efforts of the nature undertaken here, including particularly the issuance of summonses, it is clear that the plaintiffs have failed to establish any right to the relief they seek, much less a clear and certain duty or positive command so plainly prescribed as to be free from doubt, and mandamus is not available.

### E.   The Government's Motion to Enforce the Summonses Against Wells Fargo Bank and Countrywide Home Loans Should Be Granted and the Motion to Quash the Summonses Must Be Denied

The authority of the United States to issue summonses in taxpayer cases is established in 26 U.S.C. § 7602(a):

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized--

(1)   To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

14

> (2)  To summon . . . any person having possession, custody, or
> care of books of account containing entries relating to the business
> of the person liable for tax . . . to appear before the Secretary at a
> time and place named in the summons and to produce such books,
> papers, records, or other data, . . . as may be relevant or material to
> such inquiry. . . .

The Supreme Court affirmed the authority of the IRS to summon books and records in

<u>United States v. Powell</u>, 379 U.S. 48, 53-54 and 57-58 (1964), holding:

> We . . . hold that the Government need make no showing of
> probable cause to suspect fraud unless the taxpayer raises a
> substantial question that judicial enforcement of the administrative
> summons would be an abusive use of the court's process,
> predicated on more than the fact of re-examination and the running
> of the statute of limitations on ordinary tax liability.
>                       *    *    *
> Section 7602[, 26 U.S.C.] authorizes the Commissioner to
> investigate any such [tax] liability.  If, in order to determine the
> existence or nonexistence of fraud in the taxpayer's returns,
> information in the taxpayer's records is needed which is not already
> in the Commissioner's possession, we think the examination is not
> "unnecessary" within the meaning of § 7605(b).  Although a more
> stringent interpretation is possible, one which would require some
> showing of cause for suspecting fraud, we reject such an
> interpretation because it might seriously hamper the Commissioner
> in carrying out investigations he thinks
> warranted.
>                       *    *    *
> Reading the statutes as we do, the Commissioner need not meet any
> standard of probable cause to obtain enforcement of his summons,
> either before or after the three year statute of limitations has
> expired.  He must show that the investigation will be conducted
> pursuant to a legitimate purpose, that the inquiry may be relevant to
> the purpose, that the information sought is not already within the
> Commissioner's possession, and that the administrative steps
> required by the Code have been followed--in particular, that the
> "Secretary or his delegate," after investigation, has determined the
> further examination to be necessary and has notified the taxpayer in
> writing to that effect.  This does not make meaningless the
> adversary hearing to which the taxpayer is entitled before
> enforcement is ordered.  At the hearing he "may challenge the

summons on any appropriate ground." Nor does our reading of the statutes mean that under no circumstances may the court inquire into the underlying reasons for the examination. It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing, as was made in this case, that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined.

(Internal citations and notes omitted.)

The Tenth Circuit Court of Appeals applied the rule announced in <u>Powell</u> in <u>United States v. Balanced Financial Management, Inc.</u>, 769 F.2d 1440 (10th Cir. 1985), and explained:

The Government sought to enforce the IRS administrative summons to taxpayers . . . pursuant to the provisions of 26 U.S.C. § 7602(b). . . . To enforce the summons the Commissioner of Internal Revenue must meet the standards set out in <u>Powell</u>. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already in the Commissioner's possession, and that the administrative steps required by the Code have been followed.

The burden is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted. The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement. . . .

The burden then shifts to the taxpayers. The burden is a heavy one. The taxpayer must establish any defenses or prove that enforcement would constitute an abuse of the court's process. He must prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties. The taxpayer must do more than just produce evidence that would call into question the Government's *prima facie* case. The burden of

16

> proof in these contested areas rests squarely on the taxpayer. . . .
>
> Allegations supporting a bad faith defense are insufficient if conclusory. It at this stage the taxpayer cannot refute the government's *prima facie* <u>Powell</u> showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing.

<u>Id.</u> at 1443-44 (internal citations and quotations omitted).

The United States submitted the Declaration of Internal Revenue Service Revenue Agent William R. Sothen [Doc. # 15, filed 7/13/05] (the "Sothen Decl.") in support of its Motion to Dismiss. The Sothen declaration is unrefuted and establishes that Revenue Agent Sothen is conducting an investigation to determine the federal income tax liabilities of the plaintiffs, Sothen Decl., ¶3; that he issued the summonses to Wells Fargo Bank and Countrywide Home Loans in connection with that investigation, <u>id.</u> at ¶4; that the summonses were issued in good faith and for the purpose of obtaining information to aid in determining the plaintiffs' tax liabilities <u>id.</u> at ¶¶6, 9; that all administrative steps required by the Internal Revenue Code in connection with issuing the summonses were followed, <u>id.</u> at ¶¶5, 7; and that the materials summoned are not already in the possession of the IRS. <u>Id.</u> at ¶8.

Section 7604(a), 26 U.S.C., provides that jurisdiction to enforce a summons under section 7602 lies in the United States district court for the district in which the summoned party "resides or is found." Similarly, 26 U.S.C. § 7609(h)(1) provides that jurisdiction to determine motions to quash IRS summonses lies in the United States district court for the district where the party summoned resides or is found. The unrefuted evidence establishes that only Wells Fargo Bank and Countrywide Home Loans are found in the District of Colorado. Sothen Decl. at ¶¶11-12.

Neither Indymac Bank nor Union Bank of California are found in this district. Id. at ¶¶13-14.

Consequently, this court lacks jurisdiction either to enforce of the quash the summonses to

Indymac Bank and Union Bank of California, and the Petition must be dismissed insofar as it

seeks an order quashing those summonses.

The United States has met its burden to establish a *prima facie* case for the enforcement

of the summonses to Wells Fargo Bank and Countrywide Home Loans.  The burden therefore

shifts to the plaintiffs to establish a defense to the summonses or that the summonses constitute an

abuse of the court's process.  Balanced Financial, 769 F.2d at 1444.

So far as I can discern, the plaintiffs arguments against enforcement of the summonses and

to quash them are that (1) this court lacks personal jurisdiction over the plaintiffs because they do

not reside in a "United States judicial district" or in the District of Columbia, Petition, p.5; and (2)

the revenue agents involved in the investigation "were unable to produce both statutes *and*

implementing regulations . . . that authorize him/them to do anything he has done in this case. . .

." Id. at p.7.

The plaintiffs give as their address 123 El Diente Drive, Durango, Colorado.  Petition,

"Notice of Lodgement," p.2.  The state of Colorado composes a single federal judicial district,

created by 28 U.S.C. § 85.  The plaintiffs' argument that they do not reside in a United States

judicial district is frivolous.  See Lonsdale, 919 F.2d at 1448 (holding as frivolous the argument

that "individuals ('free born, white, preamble, sovereign, natural, individual common law "de jure"

citizens of a state, etc.') are not 'persons' subject to taxation under the Internal Revenue Code").

Moreover, sections 7604(a) and 7609(h)(1), 26 U.S.C., expressly confer jurisdiction on

18

this court and under these facts to determine the competing motions to enforce and to quash the IRS summonses issued to Wells Fargo Bank and Countrywide Home Loans.

The plaintiffs' second argument, that the tax laws are invalid because they are not supported by "both statutes *and* implementing regulations," also has been repeatedly rejected as lacking merit. For example, in Watts v. Internal Revenue Service, 925 F. Supp. 271, 277 (D. N.J. 1996), the court explained:

> The Watts' second argument is that the IRS, through is employees, is unable to act under 26 U.S.C. § 6321 [concerning liens to enforce taxes], without implementing regulations as set forth in 26 U.S.C. § 7805(a). Section 7805(a) provides, in relevant part, "the Secretary shall prescribe all needful rules and regulations for the enforcement of this title." By "needful rules and regulations," Congress did not intend to require the promulgation of unnecessary regulations. Section 6321 has the force of law which Congress gave it, with or without implementing regulations.

(Internal citations and notes omitted.) Accord United States v. Dawes, 2005 WL 3278027 *1 (10th Cir. Dec. 5, 2005); Gass v. United States Dept. of Treasury, 2000 WL 743671 *4 (10th Cir. June 9, 2000).

Similarly here, section 7602 authorizes issuance of the summonses, has the force of law, and does not require any implementing regulations.

Nor is there any indication or evidence that the summonses issued here constitute an abuse of the court's process. To the contrary, the summonses are appropriate process to assist the government in its legitimate and good faith investigation of the tax liabilities of the plaintiffs.

## III.  RECOMMENDATION

For the reasons stated, I respectfully RECOMMEND that the Petition be DISMISSED and the request to quash the summonses issued to Wells Fargo Bank and Countrywide Home

Loans be DENIED, and that the Motion to Dismiss be GRANTED and the summonses issued to Wells Fargo Bank and Countrywide Home Loans be ENFORCED, as follows:

(1)     That the United States be substituted as the defendant insofar as the Petition asserts claims against William R. Sothen and his co-workers, in their official capacities, and against the Internal Revenue Service;

(2)     That the claims against the United States be DISMISSED with prejudice as barred by sovereign immunity;

(3)     That the claims against William R. Sothen and his co-workers, in their individual capacities, be DISMISSED with prejudice as not available under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971);

(4)     That the Petition be DISMISSED with prejudice insofar as it seeks a writ of mandamus;

(5)     That the Petition be DENIED for lack of jurisdiction insofar as it seeks an order quashing the summonses served on Indymac Bank and Union Bank of California; and

(6)     That the United States' request to enforce the summonses served on Wells Fargo Bank and Countrywide Home Loans be GRANTED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000).  A party's objections

to this recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review.  United States v. One Parcel of Real Property, 73

F.3d 1057, 1060 (10th Cir. 1996).

      Dated February 14, 2006.

                                        BY THE COURT:

                                         s/ Boyd N. Boland
                                        United States Magistrate Judge